IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AIRIAN JOVAN MISURACA**, | Case No. 3:21-cv-00846-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WASHINGTON COUNTY DETENTION CENTER/JAIL** *et al.*, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Plaintiff Airian Jovan Misuraca ("Misuraca"), a self-represented litigant in custody at Snake River Correctional Institution, filed this civil rights action pursuant to 42 U.S.C. § 1983 challenging certain conditions of his confinement while a pretrial detainee at the Washington County Jail ("WCJ") in Hillsboro, Oregon. Specifically, Misuraca alleges that WCJ, Sheriff Pat Garrett, and Jamie Loke (together, the "County Defendants") subjected him to a prolonged period of "solitary confinement" at the height of the COVID-19 pandemic. (Am. Compl. (ECF

PAGE 1 – OPINION AND ORDER

No. 10) at 8-9.) Misuraca also alleges that the County Defendants and WCJ's food-service contractor, Trinity Service Group ("Trinity"), knowingly served him foods to which he claims to be allergic and otherwise failed to accommodate his allergy. (*Id.* at 4-6.)

Before this Court are the County Defendants' and Trinity's Motions for Summary Judgment (ECF No. 133 ("County Mot."), ECF No. 138 ("Trinity Mot.")). In their motions, the County Defendants and Trinity argue they are entitled to summary judgment because Misuraca failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), failed to plead adequate facts to state a claim on which relief may be granted, and failed to produce evidence that any named defendant violated his constitutional rights. The County Defendants further argue that they are entitled to qualified immunity. Because Misuraca's failure to exhaust available administrative remedies bars his claims,[1] the County Defendants and Trinity are entitled to summary judgment.

## BACKGROUND

This matter has a lengthy and complex procedural history well-known to the parties, which this Court will summarize only in relevant part.

On May 7, 2019, Misuraca was booked into WCJ and charged with nineteen separate Measure 11 sex offenses.[2] (Decl. of Jacob Sehorn (ECF No. 135) ("Sehorn Decl.") ¶ 3.) Misuraca remained in detention at WCJ until his trial in July 2021, which resulted in his

---

[1] Because Misuraca's failure to exhaust precludes decision on the merits of his claims, this Court declines to address the evidentiary objections to Misuraca's Exhibits (ECF Nos. 130-131) set forth in Trinity's Motion to Strike Exhibits (ECF No. 152).

[2] Measure 11 offenses are those that, pursuant to a ballot measure approved by Oregon voters in 1994, carry lengthy mandatory prison sentences. Ballot Measure 11 (1994). Measure 11 is codified at OR. REV. STAT. § 137.700 and OR. REV. STAT. § 137.707.

PAGE 2 – OPINION AND ORDER

conviction on all counts. (*Id.*) On September 8, 2021, the trial court sentenced Misuraca to life imprisonment without the possibility of parole, and he was transferred to the custody of the Oregon Department of Corrections ("ODOC") the next day.[3]

On June 3, 2021, while still in pretrial custody at WCJ, Misuraca filed this lawsuit challenging various conditions of his confinement. (ECF No. 2.) This Court dismissed the initial complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A and ordered Misuraca to amend his pleading to cure several deficiencies (ECF No. 6). Misuraca timely filed an amended complaint alleging various claims concerning the quantity, quality, and substance of the food served at WCJ, including the Defendants' failure between June and August 2020 to accommodate Misuraca's alleged allergy to "something in the carrots/carrot juice[.]" (Am. Compl. (ECF No. 10) at 4-8.) Misuraca also alleged that he had "been in solitary confinement for around 511 days[,]"[4] causing him to suffer a number of "serious issues" to which the County Defendants were "deliberately indifferent," including "risk of devastating mental and physical harm[.]" (Am. Compl. at 8-9.) Upon review, this Court determined that Misuraca had failed to remedy the deficiencies noted in the original complaint and dismissed the amended complaint in December 2021 for failure to state a claim on which relief may be granted. (ECF No. 16).

---

[3] Misuraca is presently in custody at Snake River Correctional Institution in Ontario, Oregon.

[4] The record shows that while detained at WCJ, Misuraca spent only 3.5 total days in Pod 3, WCJ's restricted housing unit—a few hours on May 9, 2019 as part of his initial booking and from August 15 to 17, 2020 as part of a disciplinary sanction for attempting to contact a witness in his criminal case—and otherwise resided in a general population housing unit. (*See* Sehorn Decl. ¶¶ 9-10, Ex. 1.) Misuraca's claim of "solitary confinement" thus appears to refer to social distancing measures implemented to prevent the spread of COVID-19 in WCJ.

PAGE 3 – OPINION AND ORDER

Misuraca appealed. The Ninth Circuit concluded that this Court's dismissal was in error because Misuraca had stated a viable claim for relief in the following respects:

> In the first amended complaint, Misuraca alleged that he suffered from a serious food allergy, that defendants were aware of the allergy, and that they continued to serve him food containing the allergen, which caused his throat to swell, vomiting, impaired breathing and weight loss. Misuraca also alleged that while a pretrial detainee he was kept in solitary confinement for over 500 days. Liberally construed, these allegations are sufficient to warrant ordering [defendants] to file an answer.

(ECF No. 22.) The Ninth Circuit thus reversed and remanded the first amended complaint for additional proceedings. (*Id.*)

On remand, this Court ordered service of the first amended complaint, which is now the operative pleading.[5] Following discovery, the County Defendants and Trinity moved for summary judgment. (*See* County Mot.; Trinity Mot.) Misuraca opposes the motions (Pl.'s Obj. to Summ. J. (ECF No. 147) ("Pl.'s Obj.").)

## **LEGAL STANDARD**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party satisfies its burden by offering the district court the portions of the record it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (explaining that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and

---

[5] Although Misuraca filed a supplemental amended complaint on February 13, 2024 (ECF No. 101), he did not request or receive leave to do so. The supplemental amended complaint therefore is not properly before this Court.

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact"). A reviewing court does not assess the credibility of the witnesses, weigh the evidence, or determine the truth of matters in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (noting that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). The court must instead view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Porter v. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

If the moving party satisfies its burden, the non-moving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex*, 477 U.S. at 324. "Mere allegations or denials" are insufficient to meet the non-movant's burden to show a genuine issue of material fact exists. *Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).) If the nonmoving party fails to provide evidence to support an essential element of his case on which he has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

Because Misuraca is a self-represented litigant, this Court construes his filings liberally and affords him the benefit of any doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that documents filed by a self-represented litigant must be liberally construed, and the complaint "must be held to less stringent standards than normal pleadings drafted by lawyers") (simplified); *see also* FED. R. CIV. P. 8(e) (instructing that "[p]leadings must be construed so as to do justice").

PAGE 5 – OPINION AND ORDER

**DISCUSSION**

The County Defendants and Trinity assert that they are entitled to summary judgment because Misuraca failed to exhaust administrative remedies available to him at WCJ prior to filing this lawsuit. (County Mot. at 12-18; Trinity Mot. at 12-13.[6]) Because Misuraca's failure to exhaust is fatal to his claims, this Court need not address Defendants' additional grounds for summary judgment.

I.     **Exhaustion Under the PLRA**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion under the PLRA is "mandatory," *Woodford v. Ngo*, 548 U.S. 81, 85 (2006), and "unexhausted claims cannot be brought in court[,]" *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524(2002)). Failure to exhaust therefore mandates dismissal of the complaint. *See Woodford*, 548 U.S. 81, 85 (2006) (noting that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); *see also McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (holding that "a district court must dismiss an action involving prison conditions when the plaintiff did not exhaust his administrative remedies prior to filing suit").

To exhaust, an adult in custody ("AIC") must "complete the administrative review process in accordance with the applicable procedural rules[.]" *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88). Although prison grievance procedures "will vary from system to

---

[6] This Court refers to the ECF-assigned pagination when citing Defendants' motions.

PAGE 6 – OPINION AND ORDER

system and claim to claim, . . . it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Id.* "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust'" a claim. *Id.*

A plaintiff's failure to exhaust may be raised as an affirmative defense at summary judgment. A defendant must show that an administrative process was "generally available" to the plaintiff, and that the plaintiff failed to exhaust that process. *See Fordley v. Lizarraga*, 18 F.4th 344, 350-51 (9th Cir. 2021) (citing *Draper v. Rosario*, 836 F.3d 1072, 1079 (9th Cir. 2016)). "Once the defendant shows that such a remedy was generally available, the burden shifts to the [AIC] to show that something in his particular case made the generally available administrative remedies effectively unavailable to him." *Fordley*, 18 F.4th at 351 (citing *Draper*, 836 F.3d at 1079)). Because failure to exhaust is an affirmative defense, the defendants bear "the ultimate burden of proving that the [AIC] has not exhausted his claims[.]" *Id.*

## II.     WCJ's Grievance Procedure

The Washington County Sheriff's Office ("WCSO") developed a grievance procedure that allows AICs to raise concerns pertaining to the rules, policies, and conditions of their confinement at WCJ. The grievance procedure and appeals process are detailed in the WCSO Inmate Manual (the "manual"), which is provided to all AICs and available in hard copy, on individually assigned electronic tablets, and on electronic kiosks in each housing unit. (Sehorn Decl. ¶ 7, Ex. 3 at 70-71.) The manual also details the specific requirements for exhausting any grievance. (*Id.*, Ex. 3 at 71.)

As set forth in the manual, a properly filed grievance must be filed under the "Grievance tab" on the electronic kiosk[7] and must meet the following requirements:

    a. Address ONLY one issue per grievance
    b. Be filed within 7 days of the event or occurrence giving rise to the grievance
    c. Contain specific details —
        (1) Date(s)
        (2) Time(s)
        (3) Location(s)
        (4) Names or descriptions of staff and inmates involved
        (5) A description of the event with as much detail as the inmate can remember
        (6) Proposed resolution to the problem

(Sehorn Decl., Ex. 3 at 70.) The manual explicitly warns AICs that "***[s]taff will not respond to any issue described in a grievance that fails to meet each and every requirement listed above,***" that "***staff will administratively close [an] improper grievance[,]***" and that "***[a]n administratively closed grievance is NOT considered exhausted and you will need to refile a proper grievance.***" (*Id.*) (emphasis in original). Once a grievance is properly filed, a response generally occurs within fourteen days, after which, AICs are to "assume the staff response is 'Denied—lacks merit[.]'" (*Id.* at 71.)

If an AIC is dissatisfied with the response to his properly filed grievance,[8] he may appeal within seven days of decision. (*Id.*) The grievance appeals process consists of four levels:

    Level 1: Jail sergeant (has 7 days to respond)
    Level 2: Jail lieutenant (has 10 days to respond)
    Level 3: Jail commander (has 14 days to respond)

---

[7] The manual provides that if an AIC is "restricted" and cannot access the kiosk, he "may fill out an Inmate Request form and turn it in to the pod deputy[,]" who will then "turn the form in to the Classifications unit where it will be entered into the grievance system." (Sehorn Decl., Ex. 3 at 70.)

[8] There is a separate track for health care grievances, which are routed to the contracted medical provider, and a separate appeals process for health care appeals. (Sehorn Decl. ¶ 7.) Alternate procedures also exist for AICs who feel unsafe filing through the usual process.

PAGE 8 – OPINION AND ORDER

Level 4:  Undersheriff (has 21 days to respond)

(*Id.* at 71.) The manual expressly states that a grievance will not be considered fully exhausted unless the AIC properly filed a timely appeal at every available grievance level.[9] (*Id.*)

### III.   Misuraca Failed to Exhaust his Instant Claims

The record reflects that Misuraca frequently utilized the grievance process throughout his detention at WCJ. (*See* Sehorn Decl. ¶ 5, noting Misuraca filed at least 85 grievances while incarcerated at WCJ and attaching true and correct copies of those grievances as Exhibit 2 (filed under seal at ECF No. 145)). Indeed, Misuraca acknowledges in his response to Defendants' motions that he "filed over 140 grievances" between May 7, 2019, when he was first detained at WCJ, and September 9, 2021, when he was transferred to ODOC custody. (*See* Pl.'s Obj. to Summ. J. (ECF No. 147) at 1.) Misuraca also regularly utilized the grievance appeals process. (*See* Sehorn Decl. ¶ 5, attesting that Misuraca "appealed 32 of the 85 grievances" submitted to this Court).

However, Misuraca fully exhausted only four of the many grievances he filed, none of which concerned an extended period of "solitary confinement" or alleged allergens in his food. (*See* Sehorn Decl. ¶ 6, he filed an appeal at every level with respect to only Grievance No. 085905503 (alleging unlawful fees), Grievance No. 099067513 (alleging dirty cell), Grievance No. 099189273 (alleging due process violations with respect to a disciplinary sanction), and Grievance No. 099297683 (alleging inadequate food service); *see also* Ex. 2.) Although Misuraca did exhaust one grievance concerning "nutritionally inadequate" food and moldy

---

[9] In the event an individual in custody is transferred to another facility, he may still exhaust a grievance by mail and is permitted additional time in which to do so. (Sehorn Decl., Ex. 3 at 71.)

PAGE 9 – OPINION AND ORDER

fruit,[10] he mentioned nothing in that grievance about his alleged carrot allergy, being served food that contained carrots, or Defendants' alleged refusals to accommodate his allergy.

Misuraca does not dispute that he failed to exhaust the claims at issue in this case but argues that this Court should excuse his failure to exhaust for two reasons.[11] First, Misuraca argues that that WCJ's administrative remedies were effectively unavailable to him because he "was not provided a physical 'inmate manual' upon entry" to WCJ and did not have access to the "grievance information" contained therein. (*Id.* at 3-5.) Second, Misuraca "avers that his grievance 'was closed out at the institutional level,'" which he argues should constitute exhaustion. Neither argument is well taken.

Although the Ninth Circuit has previously found administrative remedies effectively unavailable where a manual describing the grievance process was kept from AICs, *see Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc), Misuraca has not shown that he was altogether denied access to the manual. It is undisputed that the manual could be accessed through WCJ's electronic kiosks, and Misuraca admitted in his sworn deposition that he ultimately requested, and was provided, a physical copy of the manual. (*See* Decl. of SreeVamshi C. Reddy (ECF No. 134), Ex. 1 ("Misuraca Dep.") at 3, testifying that he did not recall if the

---

[10] Misuraca's claims concerning other aspects of foodservice at WCJ are not properly before this Court because the Ninth Circuit remanded this case for consideration only of Misuraca's claims concerning food allergens and solitary confinement. (ECF No. 22.)

[11] Misuraca also asserts that the Sehorn, Reddy, and Smith Declarations submitted in support of the County Defendants' and Trinity's summary judgment motions contain "perjury" and should be stricken from the record. (Pl.'s Obj. at 1-3.) There is no evidence to substantiate Misuraca's allegations and there is nothing in the record that would suggest bad faith on the part of the declarants. This Court thus declines to strike the Sehorn, Reddy, and Smith Declarations from the record and properly relies upon them in evaluating Defendants' summary judgment motions.

manual is available on the kiosk, but that he "asked for one, and one was provided.") Indeed, Misuraca quoted directly from the manual in a grievance he filed on July 8, 2020. (*See* Sehorn Decl., Ex. 2 (Grievance No. 095046033) at 64, complaining that a deputy reprimanded him pursuant to "a rule that does not exist in the Inmate Manual" and noting that page 65 "states that 'If you are restricted and do not have access to a kiosk then file your grievance on a[n] Inmate request form.'") That he did not have a physical copy of the manual to retain as his "own" is of no consequence given the manual's availability in other forms, and Misuraca's proven command of WCJ's grievance procedures belies his suggestion that he was unaware of or confused about the exhaustion requirement due to his lack of "grievance information." (*See* Misuraca Dep. at 3, acknowledging that the PLRA requires exhaustion prior to filing a lawsuit, and that to fully exhaust a grievance, "you escalate, appeal it to the next level"; *see also* Sehorn Decl. ¶¶ 5-6, detailing Misuraca's utilization of the grievance process and successful exhaustion of four unrelated grievances).

In addition, Misuraca's argument that his grievance should be considered exhausted because it was "closed out at the institutional level" is without merit. Misuraca fails to specify which grievance that he feels he fully exhausted, and the record makes clear that many of Misuraca's grievances were administratively closed because he habitually failed to adhere to the grievance rules. (*See, e.g.*, Ex. 2 at 16, 18, 25, 31-32, notifying Misuraca that each grievance was "filed improperly" and would be administratively closed for "failure to follow grievance procedure.") The manual expressly states that a grievance is not exhausted when it is administratively closed for failure to follow the grievance procedure, and that point was reiterated in the administrative closure notifications sent to Misuraca. (*See id.*; *see also* Sehorn Decl., Ex. 3 at 70, instructing that "[a]n administratively closed grievance is NOT considered

PAGE 11 – OPINION AND ORDER

exhausted and you will need to refile a proper grievance.") Although administratively closed grievances may be refiled to conform with the grievance requirements, there is no evidence in the record that Misuraca did so with respect to any grievance relevant to his instant claims.

In sum, the evidence in the record does not support the conclusion that Misuraca exhausted his administrative remedies with respect to the claims before this Court, or that he should be excused from the exhaustion requirement. Accordingly, the County Defendants and Trinity are entitled to summary judgment, and the amended complaint is dismissed, without prejudice. *See McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (dismissals for lack of exhaustion are without prejudice).

## **CONCLUSION**

For these reasons, this Court GRANTS Defendants' Motions for Summary Judgment (ECF Nos. 133, 138), DISMISSES Misuraca's Amended Complaint (ECF No. 10), and DENIES AS MOOT all pending motions.

**IT IS SO ORDERED.**

DATED this 30th day of September, 2025.

                                               /s/ Karin J. Immergut
                                               Karin J. Immergut
                                               United States District Judge